## William B. Manlove v. Henry G. Metzger.

1. PARTNER—*when person is not such, by estoppel.* A person cannot be held liable as a partner who is not in fact such, upon the principle of estoppel, if there is no evidence that such person held himself out as a partner at the time the credit was extended by the person seeking so to hold such person as a partner; mere belief that such person was a partner, not predicated upon any facts, is insufficient.

Action of assumpsit. Appeal from the Circuit Court of Hancock County; the Hon. J. A. GRAY, Judge, presiding. Heard in this court at the May term, 1905. Reversed and remanded. Opinion filed February 1, 1906.

VOSE & CREEL, GEORGE D. TUNNICLIFF and JOSEPH N. CARTER, for appellant.

CHARLES J. SCOFIELD and APOLLOS W. O'HARRA, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a suit in assumpsit brought by appellee, Henry G. Metzger, doing business under the name and style of Plymouth Exchange Bank, against William B. Manlove and James E. Manlove. Service was had on William B. Manlove, the appellant, but no service was had on the other defendant, nor did he appear or defend. The declaration consisted of the consolidated common counts. The bill of particulars consists of items of account of plaintiff's bank charged upon its books against J. E. Manlove only.

Appellant filed three pleas to the declaration: First, a plea denying joint liability, properly verified; second, the general issue, verified; and third, of the Statute of Frauds, averring that the several supposed promises in the declaration mentioned were special promises to answer for the debt of another person, to-wit: one Joseph E. Manlove, and that said alleged promises were not, nor was there any note of memorandum thereof, in writing and signed by the said defendant, William B. Manlove, or any other person thereunto by said defendant lawfully authorized, according to the form of the statute, etc. The plaintiff filed a demurrer to said third plea, which demurrer the court sustained and appellant abided thereby. Issues were made on the other pleas and the cause was tried by a jury, and verdict rendered in favor of the plaintiff, assessing his damages against appellant at $15,975.35. Appellant entered his motion for a new trial which was overruled and judgment rendered by the court on the verdict for the amount thereof and costs. The appellant then took this appeal to this court.

It appears from the evidence that appellee had been for many years and was during the time of the business transactions here involved, a banker at Plymouth, in Hancock county, and that appellant was a farmer living in Schuyler county, about 5 miles southeast of Plymouth. For many years appellant had been engaged in buying furs, which he kept at his farm until he had a sufficient quantity when he would sell them. In the year 1899, his son Joseph, who was living with his father, began handling furs and wool in a like manner. About August 1, 1901, he removed to

Bushnell, in McDonough county, where he continued in said business under the name and style of "Manlove Wool and Fur House." In December, 1902, he disappeared and his property was seized by his creditors. He was at that time indebted to appellee upon his bank account, which he carried on in the name of "J. E. Manlove," in the sum of $14,629.24. There is no proof that appellant was in fact a partner in the business carried on by his son. It is, however, insisted that he had not only held himself out to the world as a partner, but that he had knowingly permitted Joseph to do so. In support of the first contention evidence was adduced by appellee which tended to show that appellant exhibited an interest in the business to an extent which was not unusual when their relationship is considered; that he made frequent trips to Bushnell and a number of times received, hauled, and cared for furs belonging to the business, and in conversations with various witnesses made statements which indicated that he had a pecuniary interest in the affairs thereof. The record fails to show however that such statements were ever communicated to appellee until after Joseph had absconded. The only evidence tending to show that he knowingly permitted Joseph to hold him out as a partner, was a pamphlet published and distributed by Joseph during the summer of 1901, which was entitled "Annual Catalogue and Price List of the Manlove Wool and Fur House, J. E. Manlove, Manager, Bushnell, Ill." Also the words, "Established at Plymouth, Illinois, 1851. Re-established at Bushnell, Illinois, 1901." The pamphlet also contained a portrait of Joseph E. Manlove and his wife, and one of appellant, over which appeared the words, "Originator of the Manlove Wool and Fur House." There is no evidence however that appellant either authorized or had any knowledge of the issuing or publication of the circular until some time during the following fall or winter. While there is evidence tending to show that after the disappearance of Joseph, appellant told several persons that he had promised to pay appellee's account and that he

would do it, such evidence was incompetent under the pleadings.

Ignoring the evidence adduced by appellant which tended to show that appellee must have known that no partnership existed, it is apparent that the evidence tending to support appellee's contentions was of doubtful sufficiency. That when such conditions exist it is imperative that the record, in order to warrant an affirmance of the judgment, should be free from substantial prejudicial error, has been so often decided as to render the citation of authorities unnecessary.

During the examination of appellee as a witness in his own behalf, the abstract, from which we quote, shows the following questions and answers and the rulings of the court thereon, to-wit:

"Question, by counsel for plaintiff: You may state, Mr. Metzger, at the time this account was running in your bank, which is now sued on, from the commencement of it down to the last item, and also these previous accounts, whether or not you believed Mr. William B. Manlove to be a partner with Joseph E. Manlove in the Manlove Wool & Fur house?"

Objection by defendant: We object to that question. That is a clear conclusion. He asks him for his conclusion, what he believes. That is for the jury to determine whether he had anything to justify him or not.

By the Court: No I believe he had a right to say whether he believe so and so in this class of a case, and whether he extended credit on that. It is for the jury to say whether he had a right to believe that. The fact that he believes it by itself amounts to nothing, but if it is backed up. Objection overruled.

To which ruling of the court counsel for defendant then and there excepted.

Answer: I took W. B. Manlove to be a partner.

Question: Upon whose credit and upon what belief did you extend the credit in this account kept in the books in the name of J. E. Manlove?

Mr. Berry: We object to that.

Manlove v. Metzger.

By THE COURT: Let him answer.

To which ruling of the court counsel for defendant then and there excepted.

Answer: Why I took him to be a partner, because he took so much interest in it or helped to pay it, and all.

Question: To whom then did you extend the credit?

MR. BERRY: Object to that.

By THE COURT: Let him answer.

To which ruling of the court counsel for defendant then and there excepted.

Answer: To W. B. Manlove."

There is no evidence in the record that any of the statements of appellant testified to by witnesses for appellee, as having been made in conversations with appellant, or any of appellant's acts tending to prove, as the plaintiff claimed below, that appellant held himself out, or allowed himself to be held out, as a partner, ever came to the knowledge of appellee Metzger until after the account sued on and in controversy in this case, had accrued.

In Bates' Law of Partnership, vol. 1, p. 109, sec. 91, it is said: "A person being liable as a partner by holding out on the ground of estoppel solely, is therefore not liable to one who did not know of such holding out at the time of contracting. The holding out must antedate the contract, and the plaintiff's knowledge of and reliance on his alleged connection must be proved as of that time, for otherwise the plaintiff was not misled."

In Thompson v. First National Bank, 111 U. S., 530, the opinion of the court quotes from Lindley on Partnership (4th ed.) 48–51, approvingly as follows: "The doctrine that a person holding himself out as a partner and thereby inducing others to act on the faith of his representations, is liable to them as if he were in fact a partner, is nothing more than an illustration of the general principle of estoppel by conduct. The expression in Waugh v. Carver, 'if he will lend his name as a partner he becomes as against all the rest of the world a partner,' requires qualification; for the real ground on which liability is incurred by hold-

ing oneself out as a partner is, that credit has been thereby obtained. This was put with great clearness by Mr. Justice Parke in Dickinson v. Valpy. No person can be fixed with liability on the ground that he has been held' out as a partner, unless two things concur, viz.: first, the alleged act of holding out must have been done either by him or by his consent, and, secondly, it must have been known to the person seeking to avail himself of it. In the absence of the first of these requisites, whatever may have been done cannot be imputed to the person sought to be made liable; and in the absence of the second, the person seeking to make him liable has not in any way been misled."

In 17 A. & E. Ency. of Law (1st ed.) 880-2, the doctrine is stated thus: "Such a holding out cannot, however, effect an estoppel to deny partnership unless it was done by the person so held out, or with his knowledge, consent and acquiesence, though such knowledge and consent may be inferred from the circumstances of the case. On the same principle, a person who is held out as a partner, can be held liable as such only when the person seeking to take advantage of it, knew of such holding out and acted upon it at the time it was done, and although there had, been acts of holding out previous to the ones relied on, but unknown at the time, they are not admissible either to establish liability or to corroborate those known and relied upon. * * * While the question of what constitutes a holding out as a partner is one of fact for the jury, the courts have, nevertheless, held that the acts or language of the parties, or the circumstances of the case, must reasonably import membership in the firm and not merely an interest in it."

In De St. Aubin v. Laskin, 74 App., 455, the court reversed a judgment holding the defendant liable on the ground that the court so instructed the jury when there was no sufficient evidence that the plaintiff knew of the representations or extended credit on the strength of them.

In Dazey v. Field, 112 App., 371, where the question whether Dazey was a partner with Eilers, his son-in-law, was involved, the court held there was no partnership and no

Manlove v. Metzger.

holding out as such. It was there said: "The evidence on the second trial showed conclusively that there was no actual partnership between Dazey and Eilers, and failed to show that Dazey held himself out to either Field or the public generally as a partner of Eilers. It is true certain parties testified to conversations with Eilers, in the absence of Dazey, in which he made statements indicating that Dazey was his partner. The court below properly held that this evidence was inadmissible as against Dazey while admitting it as against Eilers. But there was no evidence against Dazey which tended to show that Field advanced money or sold stock to Eilers under the belief that Dazey and Eilers were partners."

In the light of the foregoing and other authorities we are of opinion that the testimony of appellee to the effect that when he extended the credit, he believed that appellant was a partner of Joseph, and that he extended credit by reason of such belief, was incompetent.

It is urged by appellee that inasmuch as no objections were made to the form of the objectionable questions, and no motion was interposed to strike out the answers thereto, appellant cannot now complain of such error. However that may be, such evidence is nevertheless incompetent to be considered by this court in determining whether or not there is sufficient competent evidence in the record to warrant the verdict of the jury. This is likewise true as to the testimony of some nineteen witnesses as to statements made by appellant to them, respectively, and which tended to show that he held himself out as a partner, none of which appear to have been communicated to appellee or to have influenced him to extend credit to Joseph. After a careful consideration of all the competent evidence in the record we are constrained to hold that it is manifestly insufficient to warrant a verdict that appellant either was in fact a partner, or that he either held or permitted himself to be held out to the world as such.

We are further of opinion that the court did not err in sustaining the demurrer to the plea of the Statute of

Frauds. The declaration averred a joint liability on the part of the defendants. Appellee could not have recovered thereunder on the ground that appellant had orally promised to pay the debt of his co-defendant, and, in fact, did not seek to do so.

The instructions given to the jury state the law applicable to the case with substantial accuracy, and we think that there was sufficient evidence to warrant the modifications of which complaint is made. The court cannot weigh the evidence when passing upon instructions. R. Co. v. Pulliam, 208 Ill., 456. It was not error to refuse appellant's 11th instruction for the reason that it singled out and gave prominence to a particular fact. Appellant's 12th instruction was properly refused on the ground that no issue upon which it could be based was presented by the pleadings.

For the reasons indicated. the judgment will be reversed and the cause remanded.

*Reversed and remanded.*